IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SANDRA AKINS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-4818-N-BK |
| | § | |
| CAROLYN COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3*, the undersigned now considers the parties' cross-motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 17, be **DENIED**, *Defendant's Motion for Summary Judgment*, Doc. 19, be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**I.   BACKGROUND**[1]

**A.   Procedural History**

Plaintiff seeks judicial review of a final decision by Defendant denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff filed for DIB and SSI in August 2012, claiming that she became disabled in August 2010. Doc. 14-6 at 2-14. Plaintiff had previously filed applications for DIB and SSI in 2010 that were denied by an ALJ in February 2012, and later denied review by the Appeals Council. Doc. 14-3 at 15. Finding no basis to reopen or reconsider the prior ALJ's decision, the subsequent ALJ amended Plaintiff's disability onset date to March 1, 2012, citing the doctrine of *res judicata*. Doc. 14-3 at 15. Plaintiff's current

---

[1] The following background comes from the transcript of the administrative proceedings, Doc. 14, which is split among 13 documents, Docs. 14 to 14-12.

application was then denied at all administrative levels. Doc. 14-3 at 2-6, 15-19; Doc. 14-4 at 6-11, 19-22. Plaintiff now appeals to this Court pursuant to 42 U.S.C. § 405(g).

### B. Factual Background

At the time of her alleged onset of disability, Plaintiff was 48 years old. Doc. 14-6 at 4. She has a GED and was previously employed as a truck driver and fast food cook. Doc. 14-3 at 28, 30-31.

#### *1. Physical Impairments*

There is a dearth of medical records reflecting the period following Plaintiff's disability onset date. Records generated during the relevant time frame reflect that, in September and October 2012, Plaintiff failed to keep three appointments with Dr. Joe Etter, D.O. Doc. 14-10 at 116; Doc. 14-11 at 107-08. At two appointments in September and December 2012, Plaintiff presented with lower back pain, Doc. 14-10 at 117; Doc. 14-11 at 109. Dr. Etter noted her prior medical history, including that of degenerative disk disease diagnosed in October 2010, Doc. 14-10 at 117-18; Doc. 14-11 at 109-10. There is no record of an examination by Dr. Etter or an update by him of Plaintiff's medical diagnosis or treatment.

In December 2012, however, Dr. Etter completed a medical source statement in which he diagnosed Plaintiff with arthralgia, back/neck pain, fatigue, and anxiety. Doc. 14-11 at 118. He opined that Plaintiff could stand or walk continuously for 15 minutes at a time, for a total of less than one hour during an eight-hour workday. Doc. 14-11 at 116. He also stated that Plaintiff could sit continuously for 15 minutes intervals, totaling one hour per workday. Doc. 14-11 at 116. He asserted that she would require one hour of rest lying down for both pain management and fatigue during a workday. Doc. 14-11 at 116. Dr. Etter opined that Plaintiff is unable to lift any amount of weight with any frequency and likewise is incapable of reaching overhead or

forward. Doc. 14-11 at 117. He opined that she could occasionally use her hands to grasp or pick up items. Doc. 14-11 at 117. Dr. Etter averred that Plaintiff's condition existed and persisted with these restrictions since at least August 29, 2010. Doc. 14-11 at 117.

Earlier in October 2012, a state agency medical consultant, Dr. Andrea Fritz, completed a residual functional capacity (RFC) assessment, which was mostly based upon evidence dating before the modified disability onset date. Doc. 14-10 at 126-33. Dr. Fritz opined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, and stand and sit for a total of six hours in a workday. Doc. 14-10 at 127. Dr. Fritz found no limitations in Plaintiff's ability to push or pull. Doc. 14-10 at 127. Dr. Fritz also noted that she took into account Plaintiff's complaints of pain and concluded that Plaintiff's claimed limitations were only partially supported by the evidence. Doc. 14-10 at 133. Dr. Fritz's RFC assessment was reviewed by Dr. Michal Douglas in January 2012. Doc. 14-11 at 105-107. Dr. Douglas noted "no current hospitalizations or ER visits due to physical allegations," and affirmed Dr. Fritz's prior decision. Doc. 14-11 at 107.

   2. *Mental Impairments*

Documentation of Plaintiff's mental health issues begin with her hospitalization in December 2009 following an attempted suicide. Doc. 14-8 at 3, 7-8. Starting in 2011, Plaintiff sought mental health treatment at Pecan Valley Mental Health and Mental Retardation Center. In her initial psychiatric evaluation,[2] Dr. Chandrakant Patel diagnosed Plaintiff with bipolar disorder, mixed, and polysubstance dependence. Doc. 14-10 at 97. He assessed a GAF score of

---

[2] Though this evaluation is from 2011 and excluded from consideration by the ALJ under the doctrine of *res judicata*, the Court includes it to identify the conditions for which Plaintiff was being treated. The Court also notes that Dr. Patel's treatment notes are illegible and hard to decipher. Notably, neither party cited to any particular findings or conclusions in Dr. Patel's notes.

40. Doc. 14-10 at 97. The medical evidence reflects that Dr. Patel himself saw Plaintiff five times since February 2012. Each time, he found Plaintiff's appearance to be neat and clean or well-groomed, her affect to be normal or appropriate, her speech to be normal, and her thoughts to be logical and coherent. Doc. 14-9 at 31, 33, 35; Doc. 14-12 at 27-28, 43-44. On three occasions he noted that Plaintiff was taking her medications as prescribed. Doc. 14-9 at 31, 33, 35. He assessed Plaintiff's mood as depressed and anxious on two occasions, and he noted that it was mild three other times. Doc. 14-9 at 31, 33, 35; Doc. 14-12 at 28, 44. Dr. Patel noted the lack of suicidal or homicidal ideation in every evaluation. Doc. 14-9 at 32, 34, 36; Doc. 14-12 at 28, 44. He observed her overall symptom severity to be a four on a ten-point scale in March and August 2012, and rated it a three in October 2012. Doc. 14-9 at 32, 34, 36. In January and March 2013, under "Category of Problems/Major New Symptoms," Dr. Patel selected "Established problem (to examining physician); stable or improved." Doc. 14-12 at 29, 45. Despite any improvements, however, Dr. Patel again assessed Plaintiff with a GAF score of 40. Doc. 14-12 at 29, 45.

  Pecan Valley case workers documented numerous meetings with Plaintiff and house calls to her residence over the course of her treatment. The home visits were made in conjunction with treatment plans relating to housing stability and coping skills. Doc. 14-10 at 45-47. Of 54 documented visits, Plaintiff was found to display "some progress" 45 times, as opposed to "no progress" twice and "unsatisfactory" on seven occasions. Doc. 14-10 at 4-8, 10-13; Doc. 14-11 at 21, 23-27, 38-39, 41-42, 45, 48, 50-51, 73, 78; Doc. 14-12 at 2-4, 6-8, 10-13, 15-20, 22-24, 33, 35-40. In assessing Plaintiff's activities of daily living, the only such reports in the record indicate that case workers found Plaintiff's average score increased from 4.05 to 4.6. Doc. 14-9 at 70, 76. The same reports indicate increases and decreases in Plaintiff's bipolar disorder

4

...

symptom scale scores over the course of her treatment. Doc. 14-9 at 72, 75. Case workers also noted that Plaintiff's support needs were moderate and that her main reason for being out of the labor force was that she was "not able to find/keep job." Doc. 14-9 at 46, 48.

     In October 2012, Dr. Leela Reddy conducted a psychiatric review technique (PRT) for Plaintiff's mental impairments. Doc. 14-10 at 134-46. Dr. Reddy noted that the medically determinable impairments present are bipolar disorder, personality disorder, and amphetamine dependence in full remission. Doc. 14-10 at 137, 141-42. In assessing Plaintiff's limitations, Dr. Reddy found her to have mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Doc. 14-10 at 144. Dr. Reddy cited Dr. Patel's treatment notes in support of her assessment, pointing to his notes that Plaintiff has many normal characteristics and is compliant with her medication regimen. Doc. 14-10 at 146. Dr. Reddy also noted that, though Plaintiff requires reminders to take her medications, she is able to perform house chores, care for her pets, get around independently, socialize, and manage her finances. Doc. 14-10 at 146. Dr. Reddy concluded that Plaintiff's alleged limitations were "partially supported" by the evidence in her file. Doc. 14-10 at 146. The results of Dr. Reddy's PRT were affirmed by Dr. Jim Cox in January 2013. Doc. 14-11 at 119.

     Dr. Reddy also conducted a mental RFC assessment. Doc. 14-10 at 148-50. She found Plaintiff was not significantly limited in the following abilities: (1) remembering locations and work-like procedures; (2) understanding and remembering very short and simple instructions; (3) carrying out very short and simple instructions; (4) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; (5) sustaining an ordinary routine without special supervision; (6) making simple work-related decisions; (7)

interacting appropriately with the general public; (8) asking simple questions or requesting assistance; (9) maintaining socially appropriate behavior to adhere to basic standards of neatness and cleanliness; (10) being aware of normal hazards and taking appropriate precautions; (11) traveling in unfamiliar places or using public transportation; and (12) setting realistic goals or making plans independently of others. Doc. 14-10 at 148-49. Dr. Reddy found Plaintiff was moderately limited in the following abilities: (1) understanding and remembering detailed instructions; (2) carrying out detailed instructions; (3) maintaining attention and concentration for extended periods; (4) working in coordination with or proximity to others without being distracted; (5) completing a normal work-day and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; (6) accepting instructions and responding appropriately to criticism from supervisors; (7) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (8) responding appropriately to changes in the work setting. Doc. 14-10 at 148-49. Dr. Reddy concluded that Plaintiff "can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work setting[s]." Doc. 14-10 at 150. Dr. Reddy's findings were reviewed and affirmed in January 2013 by Dr. Cox. Doc. 14-11 at 120.

### C. Hearing

At her June 2013 administrative hearing, when Plaintiff was asked about mental health issues that would impede her ability to work, she testified that she would "probably snap on somebody," which scared her because she previously had rages she could not control. Doc. 14-3 at 35-36. She also testified that her counselors at Pecan Valley were trying to help her learn to control her anger management and problem solving. Doc. 14-3 at 36. As to her physical impairments, Plaintiff testified, *inter alia*, that due to pain, she had to lie down most of the day. Doc. 14-3 at 36.

### D. The ALJ's Findings

In June 2013, the ALJ issued a decision unfavorable to Plaintiff. Doc. 14-3 at 12. At step one, she found that Plaintiff had not engaged in substantial gainful activity since March 1, 2012. Doc. 14-3 at 16. At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder and low back pain of unknown origin. Doc. 14-3 at 16. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Appendix 1. Doc. 14-3 at 16. The ALJ further found that Plaintiff retained the residual functional capacity (RFC) to perform a full range of medium work activity "limited by the need to work with things rather than people." Doc. 14-3 at 18. At step four, the ALJ found that Plaintiff could perform her past relevant work as a truck driver because this work does not require the performance of activities precluded by Plaintiff's RFC. Doc. 14-3 at 18. In determining Plaintiff's RFC, the ALJ stated that he could not accord Dr. Etter's opinion "significant probative weight" because it was "simply not corroborated by any medical evidence." Doc. 14-3 at 17. The ALJ found Plaintiff's testimony was not credible or supported by objective medical evidence. Doc. 14-3 at 18.

7

## II.  LEGAL STANDARD

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  [42 U.S.C. § 423(d)(1)(A)](). Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. [*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)](); [42 U.S.C. §§ 405(g), 1383(C)(3)](). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. [*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)](). Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. [*Greenspan*, 38 F.3d at 236]().

The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. [*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991)]() (summarizing [20 C.F.R. §§ 404.1520(b)–(f), 416.920(b)–(f)]()).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### III.  DISCUSSION

**A.  The ALJ did not err in rejecting the opinion of Plaintiff's treating physician.**

Plaintiff argues that the ALJ erred by rejecting Dr. Etter's opinion without discussing the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927. Doc. 18 at 7. Specifically, Plaintiff asserts that, because there was no other treating or examining physician to contradict Dr. Etter's findings, and only a state-agency medical consultant, the ALJ was required to evaluate Dr. Etter's opinion under the regulatory factors. Doc. 18 at 7-10. Defendant responds that substantial evidence supports the ALJ's rejection of Dr. Etter's opinion because the ALJ detailed its lack of evidentiary support. Doc. 19-1 at 8–9. Defendant contends that while Dr. Etter mentioned conditions that affect Plaintiff, his treatment notes do not indicate that Plaintiff's conditions caused her significant limitations. Doc. 19-1 at 9. Defendant argues further that evidence other than Dr. Etter's treatment notes show that his opinion is inconsistent with the record as a whole, thus, the ALJ demonstrated good cause to reject Dr. Etter's opinion. Doc. 19-1 at 10, 11. The Court finds that the ALJ did not err in giving little or no weight to Dr. Etter's opinions.

When a treating physician's opinion about the nature and severity of a claimant's impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence, the Commissioner must give that opinion controlling weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "The opinion of a specialist generally is accorded greater weight than that of a nonspecialist." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994). A treating physician's opinion may be given little or no weight when good cause exists, however, such as "where the treating physician's evidence is conclusory [or] is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques." *Newton*, 209 F.3d at 455–56.

Nevertheless, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views" under the criteria set forth in 20 C.F.R. § 416.1927. *Id.* at 453 (emphasis in original). Under that section, before the Commissioner may reject a treating doctor's opinion, he must consider the following six factors: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support for the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Id.* at 455–56. It is well settled that even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. *Paul*, 29 F.3d at 211.

In rejecting Dr. Etter's opinion, the ALJ found that his "opinion is simply not corroborated by any medical evidence." Doc. 14-3 at 17. The ALJ noted that the only

10

diagnostic tests in the record are "from October 2010 showing minimal anterior height loss involving the T12 disc and a CT scan of the lumbar spine done in August 2011 that was negative for any abnormalities." Doc. 14-3 at 17 (citations omitted). The ALJ concluded that he could not accord Dr. Etter any significant probative weight because there was no evidence that Plaintiff "has a vertebrogenic disorder that would cause the pain alleged." Doc. 14-3 at 17.

The ALJ's evaluation is supported by substantial evidence. In addition to the ALJ's stated justifications, any other useful medical evidence in the record, including that relied on by Plaintiff in reply, Doc. 20 at 2-3, predates February 2012, the disability onset date as modified by the ALJ on the basis of res judicata.[3] Doc. 14-3 at 15. The only medical evidence post-dating February 2012, and thus considered by the ALJ, are the notes of two appointments where Plaintiff's medical history was summarized, but she was not treated. Doc. 14-10 at 117-18; Doc. 14-11 at 109-10. Without any supporting medical evidence, Dr. Etter's opinion is nothing more than conclusory. Newton, 209 F.3d at 455–56 (the ALJ is not required to any weight to a treating physician's opinion that is "conclusory [or] is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques."); see also Emery v. Astrue, No. 07-CV-0084, 2008 WL 4279388 at *5 (N.D. Tex. 2008) (Kaplan, J.) (affirming ALJ's rejection of treating physician's opinions because they were inconsistent with the medical evidence in the record). Therefore, the ALJ's rejection of Dr. Etter's opinions was proper.

Furthermore, the ALJ's opinion clearly addresses multiple factors from Section 404.1527(c), so Plaintiff's argument is without merit. See Doc. 14-3 at 17 (discussing the support for Dr. Etter's opinion afforded by the medical evidence of record and the consistency of his opinion with the record as a whole). That notwithstanding, the Court concludes that, even if

---

[3] No party has contested, or for that matter even addressed, the ALJ's exclusion of pre-February 2012 medical evidence on the basis of *res judicata*.

the ALJ's discussion of the Section 404.1527(c) factors was inadequate, Plaintiff was not prejudiced. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). A review of the evidence of record reveals that the ALJ's decision to afford Dr. Etter's opinions no weight in concluding that Plaintiff was not disabled is supported by substantial evidence.

### B.  The ALJ's RFC determination is supported by substantial evidence.

Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence because the ALJ did not include any meaningful non-exertional limitations, but merely that her work be "limited by the need to work with things rather than people." Doc. 18 at 10. Plaintiff points to evidence, including Dr. Reddy's conclusion that Plaintiff cannot perform complex instructions, which she argues demonstrates her difficulty with attention and concentration and also illustrates the lack of any meaningful non-exertional limitations in the ALJ's RFC. Doc. 18 at 11. Defendant responds that the record contains multiple instances of Plaintiff being fully oriented with intact memory and ability to concentrate, and of Plaintiff working to control her anger issues. Doc. 19-1 at 13. Defendant maintains that even though Dr. Reddy and Dr. Cox opined that Plaintiff could not carry out complex instructions, the ALJ was not bound to include such statements in Plaintiff's RFC. Doc. 19-1 at 13–14. Defendant notes that, even if the ALJ had included Dr. Reddy's non-exertional limitations, Plaintiff would still have been found able to perform her past relevant work as a truck driver because such work only requires a reasoning level of three. Doc. 19-1 at 14. In reply, Plaintiff argues that the ALJ's RFC must, nonetheless, be based on substantial evidence. Doc. 20 at 5-6.

The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to

do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). It is the most that a claimant is able to do despite his physical and mental limitations, and The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. § 416.920(a)(4); 20 C.F.R. § 416.945(a). In determining the RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p; 20 C.F.R. § 416.923.

In this case, the ALJ's RFC assessment is supported by substantial evidence. As the ALJ noted, though the state agency medical consultant found Plaintiff to have moderate difficulties in maintaining concentration, persistence, or pace, Doc. 14-10 at 144, the progress notes generally show that Plaintiff "has remained fully oriented, with intact memory and ability to concentrate." Doc. 14-3 at 17. Specifically, the record reveals that in the five times Dr. Patel evaluated Plaintiff since February 2012, he observed her thoughts to be logical or coherent. Doc. 14-9 at 31, 33, 35; Doc. 14-12 at 27, 43. Additionally, Dr. Patel twice rated Plaintiff's overall symptom severity to be four on a 10-point scale, and subsequently rated it as three. Doc. 14-9 at 32, 34, 36. Again, evidence of more severe mental impairment, particularly Plaintiff's hospitalization in 2009, Doc. 14-8 at 3, 7-8, occurred well before Plaintiff's amended onset date in 2012 and, thus, was not considered, *see Hickman v. Astrue*, No. 08-CV-1194, 2009 WL 3190471 at *13 (S.D. Tex. 2009) ("During the relevant time period . . . there are no reports that [the claimant] complained of disabling side effects from medication.").

Within the relevant timeframe, the progress notes of Plaintiff's Pecan Valley case workers mostly indicate that she was making progress. For the majority of Plaintiff's visits, case workers addressed Plaintiff's rage issues and/or problems Plaintiff had with interpersonal

relationships, Doc. 14-10 at 5, 7-8, 12; Doc. 14-11 at 21-22, 42, 45, 51, 73; Doc. 14-12 at 2-4, 6-8, 13, 17-20, 22, 24, 33, 35-39; and attempted to improve her ability to engage in the activities of daily living, Doc. 14-10 at 4, 6, 8, 10-11; Doc. 14-11 at 24-27, 38-39, 41, 45, 48, 50, 73, 78; Doc. 14-12 at 6, 8, 11, 13, 16, 38, 40.  Notes from only six visits even mention any difficulties with Plaintiff's ability to focus or concentrate.  Doc. 14-10 at 6, 11; Doc. 14-11 at 78; Doc. 14-12 at 7, 11, 35.  Several other notes discuss Plaintiff's inability to get things done, but cite Plaintiff's alleged back problems as the cause, rather than an inability to concentrate or focus.  Doc. 14-10 at 4, 10; Doc. 14-11 at 26, 78.  And while a number of case worker progress notes indicated that Plaintiff still required the services of a case worker, *e.g.*, Doc. 14-12 at 13, needing services is not the same as being disabled, see *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se.  Plaintiff must show that she was so functionally impaired . . . that she was precluded from engaging in any substantial gainful activity.").  Indeed, the vast majority of case worker notes show that Plaintiff was making progress with the aid of services.  Doc. 14-10 at 4-8, 10-13; Doc. 14-11 at 21, 23-27, 38-39, 41-42, 45, 48, 50-51, 73, 78; Doc. 14-12 at 2-4, 6-8, 10-13, 15-20, 22-24, 33, 35-40; see *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability.").

       That Dr. Reddy's RFC assessment and PRT results differ from the ALJ's is of no moment.  Other evidence, including the case worker notes detailed above, suggest that Plaintiff's mental health issues were not disabling.  Moreover, it is well settled that the Commissioner, and thus in this instance, the ALJ, has sole responsibility for determining a claimant's disability status based on all of the evidence.  *Paul*, 29 F.3d at 211.  Given that the bulk of Plaintiff's issues pertained to her interpersonal skills and not to her focus, the Court concludes that the ALJ's RFC

14

determination is supported by substantial evidence.

### C. The ALJ properly evaluated Plaintiff's credibility.

Plaintiff argues that the ALJ's finding that her subjective complaints were not credible was not supported by any rationale or explanation as required by SSR 96-7p. Doc. 18 at 12. Plaintiff insists that the ALJ did not incorporate into his RFC determination her testimony that her back pain requires her to frequently recline and that she cannot stay focused. Doc. 18 at 14. Plaintiff contends that remand is required because the ALJ did not provide limitations in the RFC that correspond to Plaintiff's allegations of pain and physicians' opinions. Doc. 18 at 14. Defendant responds that, in accordance with SSR 96-7p, the ALJ's credibility determination was grounded in the evidence and articulated in his opinion; and while the ALJ may not have addressed factors in a narrative fashion, he adequately considered them. Doc. 19-1 at 15. Defendant further asserts that the ALJ's single-sentence credibility finding was not conclusory because he provided reasons throughout his decision in support of this finding. Doc. 19-1 at 15–16.

Pain constitutes a disabling condition when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Thus, the ALJ must make affirmative findings regarding a claimant's subjective complaints of pain. *Id.* The Court of Appeals for the Fifth Circuit has declined to adopt a "rigid approach" that would require the ALJ to articulate exactly what evidence supported his decision and discuss the evidence that he rejected. *Id.* Accordingly, the court has found that the ALJ's findings sufficiently addressed the claimant's credibility even where the ALJ failed to detail his findings about the five alleged objective signs of pain. *Id.* at 164. In *Falco*, the ALJ simply found that several of the claimant's symptoms were not caused by his injuries, but by his weight, his

15

complaints were exaggerated, and the medical evidence was more persuasive than the claimant's testimony. *Id.*

In this case, it is questionable whether the ALJ adequately articulated his reasons for finding Plaintiff's subjective complaints of pain to not be credible. The ALJ merely stated, apart from his rationale and in a conclusory manner, that Plaintiff's "testimony was not credible or supported by the objective medical evidence." Doc. 14-3 at 18. He also stated that Plaintiff's "creating and selling crafts belies her testimony of having debilitating pain and depression." Doc. 14-3 at 17. Even assuming these statements insufficient, the Court again notes that there is no requirement of procedural perfection where "the substantial rights of a party have not been affected." *Mays*, 837 F.2d at 1364.

Here, the Court finds that Plaintiff's substantial rights have not been affected since the medical evidence does not support Plaintiff's allegations. First, as previously noted herein, there is no medical support for Plaintiff's complaints of pain except Dr. Etter's conclusory opinions, discussed *supra*. Second, Plaintiff's allegations that she has serious difficulty remaining focused are belied by the record, particularly the case worker notes that indicate her ability to concentrate is not debilitating. Doc. 14-10 at 6, 11; Doc. 14-11 at 78; Doc. 14-12 at 7, 11, 35. In any event, the medical evidence indicates that Plaintiff's mental impairments responded to treatment. *Johnson*, 864 F.2d at 347 ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."). Thus, substantial evidence supports the ALJ's determination that Plaintiff's allegations are not credible.

Accordingly, Defendant is entitled to summary judgment in her favor.

## IV. CONCLUSION

For the foregoing reasons, *Plaintiff's Motion for Summary Judgment*, Doc. 17, should be **DENIED**, *Defendant's Motion for Summary Judgment*, Doc. 19, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on March 12, 2015.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE